# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
|||
CE DESIGN LTD., | ) |
| ) |
Plaintiff, | ) |
| ) |
v. | ) |
| ) | **Civil Action No.**
AMERICAN ECONOMY INSURANCE | ) | **12-11106-FDS**
COMPANY and ERNIDA, LLC, | ) |
| ) |
Defendants. | ) |
_____)

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is an action for declaratory judgment concerning the existence of insurance coverage. Plaintiff CE Design Ltd. seeks a declaration that American Economy Insurance Company has a duty to defend and to indemnify defendant Ernida, LLC in a pending state-court action in Illinois.

Jurisdiction is based on diversity of citizenship. Plaintiff CE is an Illinois corporation with a principal place of business in Illinois. Defendant Ernida is an Illinois limited liability company "that does business in Massachusetts."[1] (Compl. at ¶5). Defendant American Economy is a Massachusetts corporation with a principal place of business in Massachusetts.

---

[1] For the purposes of diversity jurisdiction, "the citizenship of a limited liability company 'is determined by the citizenship of all of its members.'" *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125 (1st Cir. 2011) (quoting *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006)). The complaint here does not allege the citizenship of Ernida's members. That oversight, however, has no bearing on jurisdiction, because Ernida is a nominal defendant whose interests are actually aligned with plaintiff's, and therefore its citizenship cannot defeat complete diversity. *See City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63 (1941).

This action is related to a state-court action pending in Illinois, in which CE alleges that Ernida violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, common law conversion, and the Illinois Consumer Fraud Act, 815 ILL. COMP. STAT. 505/2 (2012), by sending unsolicited junk faxes to CE and others similarly situated.

Defendant American Economy has moved to dismiss on the grounds that the case does not present a justiciable controversy and, in any event, the complaint does not state a claim upon which relief can be granted.  For the reasons set forth below, the motion will be granted.

## I.      Factual Background and Procedural History

The facts are stated as alleged in the complaint.

Between January 9, 2005, and January 9, 2006, Ernida sent unsolicited junk faxes to CE and hundreds of other similarly situated recipients.  CE alleges that Ernida knew, or should have known, that these recipients had not given express permission for the faxes to be sent to them. (Compl. at ¶¶ 12-15).  The unsolicited faxes required the expenditure of the recipients' fax toner and paper, and occupied the recipients' fax machines during the transmissions, rendering them unavailable for sanctioned use during that time.  (*Id.* at ¶¶ 24-25).

American Economy issued comprehensive general liability policies to Ernida covering the period during which the unsolicited junk faxes were allegedly sent.  (*Id.* at ¶ 15).  The policies provide coverage to Ernida for its liability for property damage "caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period.  (*Id.* at ¶ 18). The policies define "property damage" as "*a.* Physical injury to tangible property, including all resulting loss of use of that property . . . . or *b.* Loss of use of tangible property that is not

physically injured . . . ."  They define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."  (*Id.* at ¶¶ 19-20).  The policies further provide coverage for liability for "personal and advertising injury," which they define as including "injury . . . arising out of . . . [o]ral or written publication of material, in any manner, that violates a person's right of privacy."  (*Id.* at ¶40).

On July 11, 2008, CE commenced an action in Illinois state court on behalf of itself and a class of others similarly situated.  Ernida subsequently tendered defense of the action to American Economy.  Although American Economy promptly took control of Ernida's defense, on February 25, 2009, it sent Ernida a letter reserving its rights to contest coverage.

On June 21, 2012, CE commenced this action.  The complaint seeks (1) a declaration that American Economy has a duty to defend Ernida in the Illinois action, (2) a declaration that American Economy is required to indemnify and pay any judgment entered in that action against Ernida, and (3) an award of costs.

On August 6, American Economy moved to dismiss this action under Fed. R. Civ. P. 12(b)(1) and (6).  It contends that CE has not presented a justiciable controversy over which the Court can properly exercise subject-matter jurisdiction, and, in any event, the complaint fails to state a claim upon which relief can be granted.  Should the Court rule against it on those issues, American Economy also asks the Court to exercise its discretion and decline to render a declaratory judgment.

## II.    Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

**III.**   **Analysis**

    **A.**   **Actual Controversy and Standing**

Under Article III of the United States Constitution, federal courts may not grant declaratory relief unless an "actual controversy" exists.  *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1941).  In an action for a declaratory judgment, the facts alleged must present "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 273.

It is well-established that there is an actual controversy between an insured party facing potential liability and its insurer if coverage is unclear or in dispute.  *See Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 6 (1st Cir. 1984) ("It is, of course, common for an insurer to bring an action for declaratory relief against the insured to establish the limits of liability under a policy.").  This is particularly true where the insurer refuses to defend the insured or contests

coverage, because the controversy is then "immediate" and "real."  *See Maryland Casualty*, 312

U.S. at 273; *compare Metropolitan Life*, 729 F.2d at 6 ("We see no indication in the record of the

present case that any particular claim has been determined by Metropolitan to be outside the

Plan's coverage; thus a definite and concrete controversy is lacking.").

Here, the insurer's letter of February 25, 2009, indicating its intent to contest coverage,

renders the controversy between the insured and its insurer "of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment."  *Maryland Casualty*, 312 U.S. at 273.  It is of

no consequence that in a later action to contest coverage, the insurer might be the plaintiff and

the insured the defendant; "[a] party who would normally be defendant under other forms of

procedure may seek a declaration under the [Declaratory Judgment Act]."  *Aetna Life Ins. Co. v.*

*Haworth*, 300 U.S. 227 (1937).

This does not end the inquiry, however, because it is not the insured, but rather the state-

court claimant, that seeks the declaratory judgment here.  The question thus becomes whether

there is an actual controversy between the state-court claimant (and similarly situated injured

parties) and the state-court defendant's insurer.  In *Maryland Casualty*—a lawsuit brought by the

insurer—the Supreme Court found an actual controversy in a suit about the policy coverage.  312

U.S. at 273-74.   The Court reasoned that because there was certainly a controversy between the

insured and its insurer, the federal courts had jurisdiction to interpret the policy.  *Id.*  The Court

reasoned that in such a situation, if its judgment were not binding as to the potential liability of

the insurer to the state-court claimant, then, should such liability arise, the coverage issue would

be re-litigated in state court between those parties and perhaps yield a conflicting result.  *Id.* at

274.  Because conflicting judgments from the state and federal courts on precisely the same issue

would be highly undesirable, the Court found that the controversy between the state-court

claimant and the insurer was not "too remote" for it to issue a binding declaratory judgment.  *Id.*

However, neither the Supreme Court nor the First Circuit has decided whether *Maryland*

*Casualty* holds that there is federal jurisdiction over a suit *initiated by a potential state-court*

*claimant* for a declaratory judgment concerning insurance policy coverage.[2]  In light of this

unclear precedent, and because there is without question an actual controversy between the

insured and the insurer, the Court finds that the question of justiciability is more appropriately

framed as an issue of standing.[3]  The relevant inquiry thus becomes "whether the named plaintiff

is the proper party to seek declaratory relief adjudication of a particular issue."  MOORE'S

FEDERAL PRACTICE- CIVIL § 57.22 (3d ed. 2012) (citing *Warth v. Seldin*, 422 U.S. 490, 498-499

(1975) and *Flast v. Cohen*, 392 U.S. 83, 99-100 (1968)).  That is, the question is whether a third-

party state-court claimant has standing to seek a declaratory judgment as to the obligations of a

liability insurer of the alleged tortfeasor prior to obtaining a judgment against that tortfeasor.

For Article III standing, the plaintiff must allege that (1) he suffered an injury in fact to a

cognizable interest, (2) "the asserted injury is causally connected" to the defendants' alleged

wrongful conduct, and (3) if he succeeds in the litigation, his injury will be redressed.  *See*

---

[2] The First Circuit has suggested, in dicta, that jurisdiction might be lacking in such a situation.  *See Indemnity Ins. Co. of North America v. Kellas*, 173 F.2d 120, 124-127 (1st Cir. 1949) (*Maryland Casualty* does not "say that there was a controversy between the insurer and the tort-claimant of 'sufficient immediacy' so that the court would, on the basis of that controversy alone, have jurisdiction to give a declaratory judgment.  Perhaps it would be more accurate to base the jurisdiction of the court, in this type of case, on the actual and immediate controversy between the insurer and the insured, the tort-claimant being joined as a necessary and proper party in order that the court may be enabled to give more complete relief.").

[3] This is in accord with the only case plaintiff cites in support of a broad reading of *Maryland Casualty*, which is *Lott v. Scottsdale Ins. Co.*, 811 F.Supp.2d 1224, 1231 (E.D. Va. 2011).

*Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006).[4]  "In addition to these Article III

prerequisites, prudential concerns ordinarily require a plaintiff to show that his claim is premised

on his own legal rights (as opposed to those of a third party), that his claim is not merely a

generalized grievance, and that it falls within the zone of interests protected by the law invoked."

*Id.* (internal citations omitted).  These standing requirements are "both plaintiff-specific and

claim-specific."  *Pagan*, 448 F.3d at 26.

    Whether plaintiff here has met the injury-in-fact requirement turns in large part on what

substantive rights the applicable state law gives to state-court claimants as against a potentially

liable insurer.  In order to determine the extent of those rights, the Court must first determine the

applicable state law.  In determining the appropriate choice of law in diversity actions, the Court

looks to the choice of law rules of the forum in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg.*

*Co.*, 313 U.S. 487, 496-97 (1941).  With regard to disputes concerning the interpretation of

insurance contracts, Massachusetts courts have adopted section 193 of the RESTATEMENT

(SECOND) OF CONFLICT OF LAWS (1971).  Under Section 193,

> [t]he validity of a contract of fire, surety or casualty insurance and the rights
> created thereby are determined by the local law of the state which the parties
> understood was to be the principal location of the insured risk during the term of
> the policy, unless with respect to the particular issue, some other state has a more
> significant relationship under the principles stated in §6 to the transaction and the
> parties, in which event the local law of the other state will be applied.

Massachusetts courts have further held that where the insured risk can implicate multiple states,

---

[4] It is generally true that where, as here, "jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005). However, the Court will not conduct an analysis as to standing under the applicable state law (Illinois), because the Illinois standing doctrine is significantly more expansive than its federal counterpart.  *See People v. 1,124,905 United States Currency*, 177 Ill. 2d 314, 328-329 (1997).  Note that Illinois law governs according to the rule of *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), as explained in more detail in the following paragraphs.

the other governing principles of choice of law generally point to law of the domicile of the

policyholder. *General Electric Co. v. Lines,* 2008 WL 2908053, *7 (Mass. Super. 2008) ("if the

simplicity of choice of law rules is 'a goal for which to strive,' the only sensible rule in insurance

coverage cases is that the domicile of the policyholder shall govern."). The Court can ascertain

no reason why that should not be the governing rule here. Accordingly, the Court will apply the

law of Illinois to determine the substantive rights and obligations of the parties. *See Erie R.R. v.*

*Tompkins*, 304 U.S. 64 (1938).

Under Illinois law, an injured claimant generally has no direct rights against the insurer

prior to a judgment of the tortfeasor's liability, unless such rights are provided for explicitly in

the insurance contract. *See Richardson v. Economy Fire & Casualty Co.*, 109 Ill. 2d 41, 47

(1985) (holding that "the public policy of this State prohibits an injured party from recovering

personal injury damages against an insurance carrier on account of the negligence of its insured

prior to obtaining a judgment against the insured."); *Garcia v. Lovellette*, 265 Ill. App. 3d 724,

731 (1994) (finding exceptions, for medical expenses of injured parties and losses by third

parties named in the insurance contract, to the general rule). The Illinois legislature has also

provided a statutory standard provision for liability policies that, at least in part, codifies this

principle. *See* 215 ILL. COMP. STAT. 5/388 (2012).[5] This is precisely the opposite of the

_____

[5] The statute provides as follows:

> No policy of insurance against liability or indemnity for loss or damage to any person other than the
> insured, or to the property of any person other than the insured, for which any insured is liable, shall
> be issued or delivered in this State after July 1, 1937, by any company subject to this Article unless it
> contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the
> company from the payment of damages for injuries sustained or death resulting therefrom, or loss
> occasioned during the term of such policy, and *stating that in case a certified copy of a judgment*
> *against the insured is returned unsatisfied in any action brought by the injured person* or his or her
> personal representative in case death results from the accident because of such insolvency or
> bankruptcy, *then an action may be maintained by the injured person or his or her personal*

8

Virginia law that the court found "especially significant for standing purposes" in *Lott v. Scottsdale Ins. Co.*, 811 F. Supp. 2d 1224, 1230 (E.D. Va. 2011) ("Virginia law confers on tort claimants. . . the right to sue on the policy as a third-party beneficiary. . . [and] further provides that [claimants] are third-party beneficiaries 'from the moment of injury.'"). Under these circumstances, where "the injured party has no rights under the policy until and after judgment has been entered in his favor against the policyholder," plaintiff does not, as of yet, have a cognizable injury on which standing for this suit can be based. *Loeber Motors, Inc. v. Sims*, 34 Ill. App. 3d 342 (1975). Accordingly, the Court will dismiss this case for lack of standing.[6]

## B.    Discretion to Grant Declaratory Judgment

Even if the jurisdictional and standing requirements were met, it does not follow that a declaratory judgment should issue. Generally district courts "have 'a virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284  (1995) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). However, in the declaratory judgment context, that principle occasionally "yields to considerations of practicality and wise judicial administration." *Id.* at 288. Accordingly, a district court has substantial discretion to decline to enter a declaratory judgment. *DeNovellis v. Halala*, 124 F.3d 298, 313 (1st Cir. 1997); s*ee also Wilton*, 515 U.S. at 287 (the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts

---

*representative against such company under the terms of the policy* and subject to all of the conditions thereof for the amount of the judgment in such action not exceeding the amount of the policy.

*Id.* (emphasis added).

[6] Because the Court holds that plaintiff has not shown an injury-in-fact, there is nothing to draw a causal connection to or to redress. Accordingly, the Court will not address the remaining two prongs of the standing analysis.

rather than an absolute right upon the litigant.") (internal quotation marks omitted).

A number of prudential concerns counsel against this Court issuing a declaratory judgment here.  First, neither Ernida (as the holder of the policies and the primary rightsholder under them) nor American Economy (the insurer) initiated this action.  It seems unwise to deny both of the parties to the contract the right to select the forum in which the terms of the contract will be determined.  Second, the dispute about indemnity under the policies may become moot if the state court dismisses the underlying tort actions, or if those actions otherwise do not implicate the policies.  A federal court should hesitate to expend judicial resources in interpreting a contract under state law in such circumstances.  *See In re Columbia Univ. Patent Litig.,* 343 F. Supp. 2d 35, 42 (D. Mass. 2004) ("[E]ven where an actual case or controversy exists, the court must make a reasoned judgment whether the investment of time and resources will be worthwhile.") (citations and internal quotation marks omitted).

Finally, the Court finds that the factors articulated by the Fourth Circuit in *Continental Casualty Company v. Vuscardo*, 35 F.3d 963 (4th Cir. 1994) and adopted by the court in *United States Liability Ins. Co. v. Wise*, 887 F.Supp. 348 (D. Mass. 1995), weigh against issuing a declaratory judgment here.  Those factors include:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; (2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; (3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and (4) whether the federal action is being used merely as a device for 'procedural fencing,' i.e., to provide another forum in a race for *res judicata*.

*Wise*, 887 F. Supp. at 350 (quoting *Vuscardo*, 35 F.3d at 966).

The first and last factors weigh most heavily against the Court issuing the declaratory judgment here.  As to the first factor, the parties' filings make clear that there is currently a

dispute within the Illinois courts concerning whether TCPA damages are covered by general liability policies such as the one at issue here.  Although Illinois courts have in the past held that such damages may be covered, a recent case, *Standard Mut. Ins. Co. v. Lay*, 975 N.E.2d 1099, 1100 (Ill. App. Ct. 4th Dist. 2012), found TCPA damages to be uninsurable.  The Supreme Court of Illinois recently allowed leave for appeal of that decision, but has yet to issue an opinion.  *See Standard Mut. Ins. Co. v. Lay*, 2012 Ill. LEXIS 1408 (Ill. Sept. 26, 2012).  In such circumstances, the state has a compelling interest in deciding the issues of coverage and resolving the unsettled issue of state law just described.  *Cf. Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941) (establishing abstention doctrine motivated by similar reasoning).  The last factor deals with similar concerns to those already articulated above.  The choice of forum is a critical strategic decision in this case.  This Court does not find it necessary or appropriate to let a third party win the race to judgment on the interpretation of the insurance contract, particularly at this early stage.

Under the circumstances, prudential considerations weigh heavily against exercising jurisdiction over plaintiff's claim.  Accordingly, had the Court found that the jurisdictional and standing requirements were met, it would have exercised its discretion and declined to issue a declaratory judgment nonetheless.

### C.    Merits

Under the circumstances, the Court will not address the merits of the plaintiff's claim.

## IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  December 21, 2012